ADRIAN v. BROWN et al. No. 1.—196 S. W. (2d) 118.

Eastern Section. March 16, 1946.

Rehearing denied May 7, 1946.

Petition for Certiorari denied by Supreme Court, June 29, 1946.

238

Meacham & Meacham, of Chattanooga, for appellants.

Shepherd & Tipton, of Chattanooga, for appellee.

McAMIS, J. This case presents a contest between a judgment creditor and the beneficiary of an alleged parol trust to which there was no reference in the deed under which the judgment debtor acquired title. The trust was sustained and given priority and the judgment creditor appeals.

The bill was filed by William L. Adrian, Bishop of the Catholic Church, to enjoin a sale under execution of the

alleged trust property. The bill names as defendants W. L. Brown, the judgment creditor, and Brown & Company, a corporation, the judgment debtor and holder of the legal title under the alleged parol trust.

In behalf of Brown it is admitted that if the deed from complainant to Brown and Company was in fact a conveyance in trust or if complainant is entitled to a reformation of the deed to make it a trust instrument, Brown is not entitled to enforce his judgment by a sale of the land. It is insisted, however, that the evidence is not sufficiently cogent and convincing to engraft a parol trust upon the title of Brown and Company; that the evidence offered by complainant tends to vary and contradict the terms of the deed; that complainant is not entitled to reformation because the deed is in the language intended and, for this reason, there is no mistake to be corrected; and that, in any case, complainant, having acquired a deed of reconveyance from Brown and Company which he failed to record until after the levy of the execution, is not in the position of a beneficiary of the trust but occupies the status of a vendee who lost in the race of diligence.

The facts are undisputed. In 1937, complainant employed Brown and Company, a real estate concern, to act as his agent in acquiring land for a church site. All of the negotiations were with Claude Brown, its president (not to be confused with W. L. Brown, the judgment creditor). Brown first purchased for complainant twelve acres out of a forty acre tract owned by the Anderson heirs for $12,350 cash. Complainant later decided that a site on the remaining twenty-eight acres was more desirable and directed Brown and Company to purchase the remaining twenty-eight acres for $30,500, which complainant borrowed from a Chattanooga bank, execut-

ing a deed of trust on the sixteen acres to be used as a church site.

Complainant then entered into a rather complex arrangement with Brown and Company to sell the remaining twenty-four acres. It was agreed that Brown and Company would sell the twenty-four acres for $24,000 for which Brown and Company would be entitled to a commission of $3,500. Brown told complainant that he could handle sales better if complainant would deed the property to Brown and Company which, in turn, would execute deeds to purchasers. It was agreed, according to complainant, that Brown and Company was to hold the title in trust and, as partial protection against a breach of the trust by sale to innocent third parties, Brown and Company executed a deed of trust upon the property for $16,084.50. This instrument and the deed conveying the property to Brown and Company in fee simple were duly recorded.

Thereafter, Brown and Company devised a scheme by which it would attempt to sell to twenty-four individuals, for $1,000 each twenty-four "Certificates of Interest". Brown and Company had a number of such "Certificates" printed. By the terms of these instruments Brown and Company sold to the purchaser whose name was to be inserted in a blank space provided for that purpose a "Certificate of Interest" for $1,000 payable $250 cash and the balance in notes of $250 each. The "Certificates" recite that the notes were payable to complainant and that "Brown and Company holds title to said twenty-four acre tract for the said Most Reverend Bishop William L. Adrian, D. D." etc.

Although the property conveyed to Brown and Company had only a short time before been purchased at approximately $1,000 per acre, the sole consideration,

aside from the alleged trust, for the conveyance to Brown and Company was $16,084.50 represented entirely by the notes executed by Brown and Company secured by deed of trust upon the property.

The conveyance to Brown and Company recites the execution of the deed of trust and notes representing the consideration. It is dated July 1, 1937, but the transaction seems not to have been completed until July 24, 1937, when Brown and Company acknowledged the deed of trust before a Notary Public. In the meantime Father Shea moved to Chattanooga evidently to establish a church and became familiar with the transaction through conversations with Brown. Brown and Company failed to sell the property as contemplated and Father Shea demanded a reconveyance of the property to complainant. This was accomplished by a deed from Brown and Company to complainant dated September 12, 1939, recorded June 26, 1941. Complainant released the notes totaling $16,084.50 on April 18, 1941. Between the date of the release and the registration of the deed, May 24, 1941, W. L. Brown obtained a judgment against Brown and Company. On the date of the judgment the property was standing, according to the recorded title, in the name of Brown and Company unencumbered.

■ We think the evidence is sufficiently cogent and convincing to establish a parol trust. Bishop Adrian testified unequivocally that Brown and Company agreed before the deed was executed and delivered that the property was to be held in trust. Father Shea admits that he did not handle negotiations with Brown and Company and for that reason had no personal knowledge of the transaction but he says he learned of the arrangement through Claude Brown. Judge Shepherd, a respected member of the Chattanooga Bar, testified that, as attor-

ney for complainant, he discussed the matter with Brown on more than one occasion and that Brown admitted in substance that he had the property for sale for complainant and agreed to reconvey it to complainant subject to a later accounting of his trusteeship.

In addition to the foregoing testimony the claim of a parol trust is supported by the circumstance that the propery was conveyed to Brown and Company for much less than cost and without any consideration except the execution of the notes of Brown and Company. But the most convincing evidence is the recital in the "Certificates of Interest" that Brown and Company held the property in trust for Bishop Adrian. This was a declaration against the interest of Brown and Company and we can think of no reason why it would have been inserted in the Certificates contrary to the true fact. Brown did not testify, having died before the case was tried.

It is true that a declaration of trust by the grantor must be before or contemporaneous with the conveyance. Martin v. Lincoln, 72 Tenn. 334, 351, 4 Lea, 334, 351.

In this case, according to the testimony of Bishop Adrain which is not disputed the trust was declared before or contemporaneous with the conveyance to Brown and Company. Admissions by the grantee subsequent to the conveyance amply confirm the existence of the trust and corroborate the testimony of Bishop Adrian. We think such admsisions are competent against the grantee and those standing in privity with it.

An express trust in realty declared in parol is good in Tennessee. Watkins v. Watkins, 160 Tenn. 1, 22 S. W. (2d) 234; Garland v. Higgins, 160 Tenn. 381, 25 S. W. (2d) 583; Hunt v. Hunt, 169 Tenn. 1, 80 S. W. (2d) 666.

■ Parol evidence of the trust is not inadmissible as tending to contradict the terms of a written instrument unless the language of the instrument is such as to exclude the existence of a trust. Hunt v. Hunt, supra; Mee v. Mee, 113 Tenn. 453, 82 S. W. 830, 106 Am. St. Rep. 865.

■ ■ Such a trust is enforceable except against an innocent purchaser for value or a creditor of the vendee who extended credit upon the faith of the title standing in the name of his debtor, or unless the property has been otherwise dealt with as the absolute property of the grantee by innocent third parties. Leech v. Hillsman et al., 76 Tenn. 747; Colyar v. Capital City Bank, 103 Tenn. 723, 54 S. W. 977; Wallace v. P'Pool, 4 Tenn. App. 30; Dunlap v. P'Pool, 6 Tenn. App. 91. It is not contended in this case that credit was extended on the faith of the record title and under the authorities cited we think the trust may be enforced and given priority over the claim of the judgment creditor.

■ It may be true as learned counsel for the judgment creditor insist that complainant is not entitled to a reformation of the deed because it contains the language which the parties intended. But reformation of the deed is not necessary. Complainant had to show only that while Brown and Company held the legal title, it actually had no interest in the property but held the title in trust for the benefit of complainant. Such a showing defeats the rights of creditors unless, as we have seen, the grantor is for some reason estopped to set up the trust. The creditor can attach only such interest as the grantee actually had in the land at the date of the levy. Bryant v. Bank, 107 Tenn. 560, 64 S. W. 895.

This brings us to the question of whether or not complainant's status is that of the beneficiary of a parol trust or that of a vendee of Brown and Company under the

deed of reconveyance. If the latter, he cannot prevail because the deed was not recorded until after the levy was made.

 Complainant's rights are founded upon the agreement of Brown and Company to hold the property in trust for his benefit. The deed of reconveyance accomplished nothing except to relieve complainant of the necessity of filing a bill to enforce his rights. In its own right Brown and Company had nothing to convey. The registration of a deed is necessary to make it binding upon existing or subsequent creditors of, or bona fide purchasers from the grantor. Code, sec. 7668.

 As held in Wright v. Black, 159 Tenn. 254, 259, 17 S. W. (2d) 917, 65 A. L. R. 357, it is only creditors of, or bona fide purchaser from, the makers of an unrecorded deed who may disregard such instrument. Since, as before stated, creditors who did not extend credit on the faith of the record title can look only to the interest actually owned by the debtor, a trustee who holds no interest in his own right is not a "maker" under the statute. The rights of creditors of Brown and Company were not in any sense adversely affected by the reconveyance to complainant and, we think, complainant may disregard the reconveyance and rely upon the trust.

We do not think Hood v. Hogue, 131 Tenn. 421, 175 S. W. 531, 532, Ann. Cas. 1916D, 383, relied upon by Brown, the judgment creditor, is opposed to the view indicated. In that case the contest was between a vendor who failed to reserve a vendor's lien in the deed of conveyance and, later, obtained a reconveyance which he failed to record before the property was levied upon by a creditor of the vendee. In defining the status and rights of such a vendor the court said:

"The vendor, until he begins suit, is for all purposes of priority, in like plight with a general unsecured creditor. It therefore seems clear that, when Hood procured a deed of reconveyance from Parks, he did so standing on a plane no higher than such a creditor, and not as one having the status of a lienor with a fixed or existing lien. When he received the deed, he was compelled by the registration laws to record it in order to his protection against creditors of Parks, who was, in that attitude, to be considered as his vendor for all pertinent purposes."

We think there is a material difference in the two cases. In the Hood case, as pointed out in the quotation, the vendor, having a mere equitable right to have a lien fixed, stood in the plight of a general unsecured creditor until he instituted a suit for that purpose. In this case complainant, as the beneficiary of the trust had a real and subsisting interest in the property which he had a right to enforce at any time, as in Bryant v. Bank, 107 Tenn. 560, 64 S. W. 895, where, owing to mistake, a clause retaining a lien for purchase money was omitted from the deed but, before the levy, was inserted by mutual agreement.

Finding no error in the decree, the assignments must be overruled and the decree affirmed with costs taxed to appellant and surety.

### On Petition to Rehear.

The judgment creditor, W. L. Brown, has petitioned for a rehearing on the ground that the court failed to act upon his assignments of error challenging the admissibility of the evidence tending to show that Claude Brown, President of Brown and Company, admitted that the title was held in trust for the benefit of complainant. We intended to overrule all of these assignments when we said:

"Admissions by the grantee subsequent to the conveyance amply confirm the existence of the trust and corroborate the testimony of Bishop Adrian. We think such admissions are competent against the grantee and those standing in privity with it."

However, in view of the apparent uncertainty as to our holding on this question, it may not be out of place to deal with it more in detail.

In the brief supporting the petition to rehear, it is insisted that the testimony of Father Shea is incompetent because he was not present when the original transaction occurred and because his testimony as to what Claude Brown told him is hearsay and incompetent.

The testimony of this witness shows that he discussed the transaction with Claude Brown, demanded from time to time that Brown either sell the property or reconvey it to complainant; and that the witness finally succeeded in obtaining a reconveyance of the property to complainant. This testimony, if accepted, tends to show that Brown and Company, by act and conduct, dealt with the property in recognition of complainant's rights as the beneficiary of the trust.

The acts and conduct of Brown and Company inconsistent with ownership of the property in its own right are equally as expressive as any written or spoken statement offered as an admission against interest would be and, we think, such evidence is admissible under the principles applicable to admissions and declarations. 20 Am. Jur. 475, 476.

We think the testimony of this witness and the testimony of other witnesses as to statements made by Claude Brown, as well as the recital in the "Certificates of Interest" that the property was held in trust for complainant, should be admitted as an admission by the judg-

ment debtor that the property was held in trust and not in its own right even though the statements attributed to Brown were made subsequent to the execution of the deed.

We pointed out in our original opinion that a declaration of trust by a grantor must be made before, or contemporaneous with the conveyance and cited Martin v. Lincoln, 72 Tenn. 334, 351, 4 Lea 334, 351, for this holding. By this we meant that the trust relationship must have been established before or at the time of the conveyance, not that admissions made by the alleged trustee subsequent to the conveyance are inadmissible against one standing in privity with the trustee.

██ It is the well recognized general rule that admissions are admitted whether made by one against whom a trust is asserted or by one who is asserting a trust, irrespective of the time when the admission was made. 54 Am. Jur., 476, Trusts, Sec. 617.

"Statements of a debtor while he is in possession of real or personal property and in disparagement of his title thereto are competent against an attaching or execution creditor, provided the statements were made prior to the time at which the specific rights of the creditor as against such property accrued." 31 C. J. S., Evidence, Sec. 336, p. 1110.

For the reasons indicated we are constrained to adhere to our original opinion that all of the assignments should be overruled and the decree affirmed.

Hale and Burnett, JJ., concur.