LOUIS KUSTOFF *v.* STUYVESANT INSURANCE COMPANY.[*]

*(Nashville.* December Term, 1929.)

Opinion filed December 21, 1929.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 3223, p. 1186, n. 72; Fire Insurance, 26CJ, section 25, p. 38, n. 92; p. 39, n. 4; section 317, p. 249, n. 52.

WILSON, GATES & ARMSTRONG, for plaintiff in error.

FITZHUGH, MURRAH & FITZHUGH, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a suit on a fire insurance policy. Each party moved for peremptory instructions below. The defendant's motion was sustained. The Court of Appeals reversed the judgment of the circuit court and remanded the case for a new trial. A petition for *certiorari* was filed by each party, each petition granted, and each party here seeks a final judgment in this court as on a directed verdict.

We agree with the Court of Appeals that a new trial should be awarded but are not altogether in accord with some of the views indicated in the opinion of that court.

The plaintiff Kustoff opened up a small merchandise business in a rented store in Crawfordsville, Arkansas, about October 31, 1924. On that day he took out from defendant Stuyvesant Insurance Company a fire insurance policy in the sum of $3000 covering his stock of goods.

The goods insured were destroyed by fire on January 24, 1925. The plaintiff undertook to prove a loss of approximately $4000, which loss, the policy containing a three-fourths value clause, about equaled the face of said policy.

On the trial the defendant introduced evidence tending to make an issue as to the *bona fides* of the loss and as to the value of the goods destroyed. There was suf-

ficient evidence, in our opinion to entitle the defendant to go to the jury on both of these issues and the action of the Circuit Judge in overruling plaintiff's motion for a directed verdict may be sustained on this ground.

We do not understand from defendant's brief that the loss is yet conceded to have been honest. While, in this court, plaintiff's counsel offered to waive claim for reimbursement for certain disputed items, the amount still demanded would considerably exceed the actual loss, if that loss were estimated from the testimony of defendant's witnesses. With such issues of fact undetermined, the case is in no condition for final judgment for plaintiff in this court under any conception of the applicable law.

■ Nor, as heretofore stated, do we think the defendant is entitled to final judgment in its favor in this court.

The trial judge directed a verdict for defendant on account of the failure of the plaintiff to comply with the iron safe or record warranty provision of the policy. This is the standard clause, section 1 of which is as follows:

"The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and within twelve months of the last preceding inventory if such has been taken. Unless such an inventory has been taken within twelve calendar months prior to the date of this policy, and together with a set of books showing a complete record of business transacted since the taking of such inventory, is on hand at date of this policy, one shall be taken within thirty days after the date of this policy, or in each and either case this entire policy shall be null and void."

Section 2 contains the usual provision requiring that a set of books be kept which shall clearly and plainly present a complete record of the business, etc.

The court below was of opinion that there had been a substantial compliance with the terms of the policy in the matter of keeping a set of books and we do not disagree with His Honor in this connection. While the plaintiff, however, had been in business about three months, he had taken no inventory and had made no effort whatever to comply with this provision of the policy in the opinion of the trial judge and His Honor thought that such disregard of his obligation defeated plaintiff's right to any recovery on the contract.

The iron safe or record warranty clause has been declared by this court reasonable, valid and enforceable by the insurer. *Hughes Bros.* v. *Aetna Insurance Co.,* 148 Tenn., 293; *Insurance Company* v. *Whittaker,* 112 Tenn., 151.

While it is not insisted that the plaintiff had actually taken an inventory of his stock of goods, it is urged in his behalf that the records preserved by him in this case were the equivalent of an inventory and that he substantially complied with this stipulation of the policy.

In determining whether there was a substantial compliance in this respect, we feel constrained to follow the law of Arkansas. The plaintiff was in business in Arkansas, the goods insured were located there, and the policy was countersigned and issued by the defendant's agent at Crawfordsville in that State.

Save in unusual cases, an insurance contract is to be interpreted by the law of the place where it was made. *Roberts* v. *Winton,* 100 Tenn., 584; *Moak* v. *Continental Casualty Company,* 4 Tenn. App., 287, 32 C. J., 977.

 In an ordinary policy like the one before us, dependent for validity upòn countersignature and delivery by a local agent "the place of the contract is fixed by the place where the agent .countersigns and delivers the policy." 32 C. J., 980, and cases cited; Joyce on Insurance, section 229.

 The plaintiff Kustoff introduced a book which he testified had been kept by him purporting to contain entries of each consignment of goods received since he had been in business, the invoice price of such goods and the name of the merchant from whom each consignment was received. He also testified that he kept on file invoices covering all consignments. Some of these invoices were destroyed in the fire but the plaintiff introduced copies obtained from the merchants from whom he had bought, so that on the trial, invoices, either originals or duplicates, were offered corresponding with all the goods he had received.

In the case of *Queen of Arkansas Ins. Co.* v. *Forlines,* 94 Ark., 227, 126 S. W., 719, the facts were quite similar. Overruling a contention of the insurer that recovery on the policy was defeated on account of a failure to take and preserve an inventory, the Supreme Court of Arkansas said:

"The entries in the book showed the total of each consignment of goods, with the date thereof, and the name of the merchant from whom same was purchased. The merchants from whom the goods were purchased retained the itemized statements of these goods, and from these merchants these itemized statements could be, and in this case were, actually obtained. In effect, the duplicates of these statements were the same as if the statements originally furnished to plaintiff had not been destroyed, but had been preserved. These statements

gave the items of the goods purchased. The book, which the plaintiff kept, showing in totals the stock of goods, was an index to these statements which were kept in a place safe from the fire, and thus became a part of the book, and these taken together constituted an itemized inventory of the goods which the plaintiff had in stock. Our statute provides that substantial compliance upon the part of assured with the terms, conditions, and covenants of fire insurance policies on personal property shall be deemed sufficient. Kirby's Dig., section 4375a; *Arkansas Mutual Fire Ins. Co.* v. *Woolverton,* 82 Ark., 476, 102 S. W., 226.

"The object and purpose of the provisions in the iron-safe clause in requiring an itemized inventory to be made and kept and the keeping of books showing all purchases, sales, and shipments was to obtain from these a complete record of the business; so that from these it could be ascertained what amount of goods were on hand at the time of the fire. In the case at bar, the plaintiff had been in business such a short time that the invoices of the goods first bought by him constituted in effect an itemized inventory of his stock."

The language quoted is not dicta as insisted by counsel for the defendant. The judgment of the court was rested on two grounds, (1) that there had been a waiver of the inventory clause; and (2) that there was a substantial compliance with the inventory clause. The latter proposition was plainly a point decided.

While the conclusions of the Arkansas court just quoted do not seem to be supported by the weight of authority, nevertheless if such conclusions are duly proven as the law of Arkansas, we shall think it proper to apply that law in this case. We have examined the Arkansas

decision in order to determine the materiality of the plaintiff's exception to the action of the trial judge in refusing an application of plaintiff to be allowed to plead and prove the law of that State. This application was made during the discussion of the motions for directed verdict. Under our liberal practice as to amendments, we think that the plaintiff should have been allowed to amend his declaration so as to plead the Arkansas law and to prove that law. The application came somewhat late, but the proof of the law of the other State would have been largely a formal matter, would have addressed itself to the court and no delay would have been occasioned. As the remarks of the trial judge disclose, he had the Arkansas decision before him, and refused to follow it.

While, as above stated, we have examined the case of *Queen of Arkansas Ins. Co.* v. *Forlines, supra,* we cannot judicially notice that decision and apply it, since it was not proven in the lower court. Sec. 5586, Thompson's-Shannon's Code; *Bagwell* v. *McTighe,* 85 Tenn., 616; *Templeton* v. *Brown,* 86 Tenn., 50; *Watkins* v. *Watkins,* decided December 7, 1929.

The judgment of the Court of Appeals is accordingly affirmed and the cause remanded for further proceedings in conformity with this opinion, with leave to parties to plead and prove the law of Arkansas, which we think must control.

The costs of this court and of the Court of Appeals will be divided between the parties. The costs below will await the outcome of the case.